**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DENNIS LARKIN and DANIELLE GOSLINE, individually and on behalf of all others similarly situated, | Case No. 1:25-cv-07307 |
| Plaintiffs, | Oral Argument Requested |
| v. | |
| CAREMARK RX, L.L.C. (d/b/a CVS CAREMARK), | |
| Defendant. | |

<u>**DEFENDANT CAREMARK RX, L.L.C.'S REPLY MEMORANDUM OF LAW IN**</u>
<u>**FURTHER SUPPORT OF ITS MOTION TO DISMISS**</u>

# TABLE OF CONTENTS

ARGUMENT .................................................................................................................. 1

I.    The Court may consider the PBM Agreements. .............................................. 1

II.    Plaintiffs' failure to name the proper entity warrants dismissal of the Complaint. ......... 2

III.    Plaintiffs fail to allege a plausible theory for a breach of fiduciary duty (Count I). ....................................................................................................................... 3

    A.    Plaintiffs abandon their theory that Caremark breached any fiduciary duty in managing its formularies. ..................................................... 3

    B.    Plaintiffs impermissibly repackage their claim for benefits as a claim for breach of fiduciary duty. ..................................................................... 3

IV.    Plaintiffs fail to allege a prohibited transaction claim (Count II). .................................. 6

V.    Plaintiffs do not plausibly allege a violation of the plan terms (Count III). ................... 7

    A.    Plaintiffs concede that Caremark denied their claims in part due to formulary status. ............................................................................... 7

    B.    Plaintiffs concede that Caremark did not deny coverage for Zepbound after Plaintiffs provided documentation that Wegovy was contraindicated for them. ............................................................................................. 8

VI.    Plaintiffs' other claims should be dismissed as duplicative........................................... 9

VII.    Plaintiffs cannot assert claims related to plans in which they do not participate. .......... 9

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aracich v. Bd. of Trs. of Emp. Benefit Funds of Heat & Frost Insulators Loc. 12*,
2023 U.S. App. LEXIS 18729 (2d Cir. July 24, 2023)............................................................4, 5

*Beach v. JPMorgan Chase Bank, Nat'l Ass'n*,
2019 U.S. Dist. LEXIS 97946 (S.D.N.Y. June 11, 2019)........................................................10

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002).......................................................................................................1

*Curtis v. Aetna Life Ins. Co.*,
648 F. Supp. 3d 358 (D. Conn. 2023)......................................................................................11

*DiFolco v. MSNBC Cable L.L.C.*,
622 F.3d 104 (2d Cir. 2010).......................................................................................................1

*Doe v. Express Scripts, Inc.*,
837 F. App'x 44 (2d Cir. 2020) .................................................................................................6

*Elsroth v. Consol. Edison Co. of N.Y., Inc.*,
10 F. Supp. 2d 427 (S.D.N.Y. 1998).........................................................................................8

*Faber v. Metro. Life Ins. Co.*,
648 F.3d 98 (2d Cir. 2011). (Opp. .).......................................................................................10

*Felske v. Hirschmann*,
2012 U.S. Dist. LEXIS 29893 (S.D.N.Y. Mar. 1, 2012) ..........................................................2

*Fletcher v. ConvergEx Group, L.L.C.*,
679 F. App'x 19 (2d Cir. 2017) ...............................................................................................10

*Fletcher v. ConvergEx Grp. LLC*,
388 F. Supp. 3d 293 (S.D.N.Y. 2019)................................................................................10, 11

*Jones v. Aetna Life Ins. Co.*,
943 F.3d 1167 (8th Cir. 2019) ...................................................................................................3

*La. Health Serv. & Indem. Co. v. Celgene Corp.*,
2025 U.S. Dist. LEXIS 67207 (S.D.N.Y. Mar. 31, 2025) ........................................................2

*Malik v. City of N.Y.*,
841 F. App'x 281 (2d Cir. 2021) .......................................................................................1, 3, 9

*Moreno v. Deutsche Bank Ams. Holding Corp.*,
2017 U.S. Dist. LEXIS 143208 (S.D.N.Y. Sep. 5, 2017).......................................................10

*Mulder v. PCS Health Sys., Inc.*,
  432 F. Supp. 2d 450 (D. N.J. 2006) ...................................................................................6

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
  693 F.3d 145 (2d Cir. 2012)...................................................................................10, 11

*O'Brien v. Nat'l Prop. Analysts Partners*,
  719 F. Supp. 222 (S.D.N.Y. 1989) ..................................................................................7, 8

*Oasis Cap., LLC v. Connexa Sports Techs. Inc.*,
  2023 U.S. Dist. LEXIS 113684 (S.D.N.Y. June 30, 2023) (Stanton, J.) ...............................1, 3

*Ret. Bd. of the Policemen's Annuity and Benefit Fund of the City of Chi. v. Bank of N.Y.*
  *Mellon*,
  775 F.3d 154 (2d Cir. 2014)......................................................................................11

*Spillane v. N.Y.C. Dist. Council of Carpenters & Joiners of Am.*,
  2024 U.S. App. LEXIS 1375 (2d Cir. Jan. 22, 2024) .................................................5

*Xie v. JPMorgan Chase Short-Term Disability Plan*,
  2017 U.S. Dist. LEXIS 87493 (S.D.N.Y. June 7, 2017).............................................4

**RULES**

Fed. R. Civ.P. 12(b)(6)............................................................................................2

**ARGUMENT**

Plaintiffs' own allegations, coupled with the concessions in their Opposition, confirm that the Complaint should be dismissed.

**I.      The Court may consider the PBM Agreements.**

Plaintiffs urge the Court to disregard the PBM Agreements because they are "not parties" to those agreements and do not "possess" them. (Opp. at 9 (ECF No. 48).) That is of no consequence. The applicable standard is whether the document is "incorporated by reference" in or otherwise "integral to" the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (quotations omitted). As Defendant argued (Mot. at 10 (ECF Nos. 38, 41, 42)),[1] Plaintiffs explicitly incorporated the PBM Agreements by reference in their Complaint. (*See* Compl. ¶¶ 37-38, 82 (ECF No. 1).) Plaintiffs do not respond to this argument or otherwise dispute that the Complaint expressly refers to the "contract[s]" between Caremark and the plan sponsors. *Oasis Cap., LLC v. Connexa Sports Techs. Inc.*, 2023 U.S. Dist. LEXIS 113684, at *11 n.3 (S.D.N.Y. June 30, 2023) (Stanton, J.) ("Failure to oppose an argument effectively waives it."); *see also Malik v. City of N.Y.*, 841 F. App'x 281, 284 (2d Cir. 2021). Further, Plaintiffs' Complaint contains allegations about Caremark's formulary management for their clients' plans, as well as the duties and responsibilities Caremark performed under the PBM Agreements. (Compl. ¶¶ 37-38, 163.) Thus, the PBM Agreements are "integral to" the allegations in the Complaint. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

---

[1]     Plaintiffs have incorrectly named Caremark Rx, L.L.C. ("Caremark Rx" or "Defendant"). The entity that served as the PBM for Plaintiffs' plans is CaremarkPCS Health, L.L.C. ("Caremark") (*See* Mot. at 1, n.1.)

II.    **Plaintiffs' failure to name the proper entity warrants dismissal of the Complaint.**

Defendant argued that the Complaint must be dismissed because the Court lacks personal jurisdiction over Caremark Rx—the only named defendant. (Mot. at 12-14.) To establish this, Defendant cited to the PBM Agreements, which confirm that Caremark Rx is not the PBM for either of Plaintiffs' health benefit plans. (Mot. at 12, Exs. 1, 3.) Plaintiffs fail to respond to this argument altogether and do not otherwise mention personal jurisdiction in their brief. Their failure to respond is tantamount to a concession that the Court lacks personal jurisdiction over Caremark Rx. *See La. Health Serv. & Indem. Co. v. Celgene Corp.*, 2025 U.S. Dist. LEXIS 67207, at *79 n.57 (S.D.N.Y. Mar. 31, 2025); *Felske v. Hirschmann*, 2012 U.S. Dist. LEXIS 29893, at *3 (S.D.N.Y. Mar. 1, 2012).[2] Because Plaintiffs concede that the Court lacks jurisdiction over Caremark Rx, the Complaint must be dismissed in its entirety.

Even though the PBM Agreements confirm Plaintiffs have named the wrong entity, Plaintiffs proffer only that their error was "reasonabl[e]" because the trade name "CVS Caremark" is utilized in member-facing communications, rather than the actual corporate name of the entity. (Opp. at 10.) Regardless of whether Plaintiffs' mistake is "reasonabl[e]" (or not), that is not the standard under Fed. R. Civ. P. 12(b)(6). Plaintiffs fail to explain how their allegations against Caremark Rx are "plausible" given that Caremark Rx is not the PBM for Plaintiffs' health plans.

Plaintiffs' only other response is to refer to unrelated complaints that have named "Caremark Rx" as a defendant. (Opp. at 11-12.) Whether Caremark Rx was named in a *different* lawsuit brought by *different* plaintiffs involving *different* plans has no bearing on whether Caremark Rx was properly named as a defendant in *this* lawsuit—where the PBM Agreements confirm Caremark Rx is not the PBM. In short, Plaintiffs fail to identify any allegations that

---

[2]    Plaintiffs do not dispute that the Court can properly consider the PBM Agreements in connection with Defendant's personal jurisdiction argument.

plausibly suggest that Caremark Rx (as opposed to Caremark) engaged in the conduct at issue in the Complaint. (Opp. at 10-12.)

### III.    Plaintiffs fail to allege a plausible theory for a breach of fiduciary duty (Count I).

#### A.    Plaintiffs abandon their theory that Caremark breached any fiduciary duty in managing its formularies.

Plaintiffs originally alleged that Caremark "breached its fiduciary duties … by removing Zepbound from formularies and adding Wegovy[.]" (Compl. ¶¶ 30, 172.) Plaintiffs now concede, however, that Caremark does not act as a fiduciary when managing its formularies because formulary changes are part of the administration of Caremark's own business as a PBM. (Opp. at 7 (describing removing a drug from a formulary as "a non-fiduciary formulary decision").) Now, Plaintiffs argue their breach of fiduciary duty claim is premised solely on Caremark's allegedly improper denial of coverage for Zepbound. (*See* Opp. at 7, 12-15.) Plaintiffs have thus abandoned and/or waived any argument that removing Zepbound from Caremark's formulary is a fiduciary act for which any fiduciary liability could attach. *See Malik*, 841 F. App'x at 284; (citations omitted); *Oasis Cap., LLC*, 2023 U.S. Dist. LEXIS 113684, at *11 n.3.

#### B.    Plaintiffs impermissibly repackage their claim for benefits as a claim for breach of fiduciary duty.

Courts must carefully scrutinize whether a plaintiff has artfully disguised a benefits claim as a breach of fiduciary duty claim. *See Jones v. Aetna Life Ins. Co.*, 943 F.3d 1167, 1169 (8th Cir. 2019). Plaintiffs concede that their core allegation is that Caremark wrongfully denied them benefits under their plans. (*See* Opp. at 12 (noting claim is premised entirely on Caremark's "exercise of discretionary authority in adjudicating prescription drug claims and appeals, specifically Caremark's determinations that Zepbound was 'not medically necessary.'"); *id.* at 13 ("Caremark exercised discretion to interpret plan medical-necessity provisions and made binding benefit determinations on that basis.").) This is a quintessential claim for benefits, and "courts in

this Circuit have repeatedly rejected attempts to repackage claims for 'wrongful denial of benefits under Section 502(a)(1) as claims for breaches of fiduciary duties under Section 502(a)(3).'" *Xie v. JPMorgan Chase Short-Term Disability Plan*, 2017 U.S. Dist. LEXIS 87493, at *11 (S.D.N.Y. June 7, 2017); *see also Aracich v. Bd. of Trs. of Emp. Benefit Funds of Heat & Frost Insulators Loc. 12*, 2023 U.S. App. LEXIS 18729, at *13-14 (2d Cir. July 24, 2023) (affirming dismissal of fiduciary duty claim premised on improper denial of benefits because the claim reiterated the basis for plaintiff's claim for benefits and did not "state an independent claim for breach of fiduciary duty.").

Plaintiffs argue that they are entitled to plead both claims because they involve "distinct misconduct, distinct injuries, and seek distinct forms of relief." (Opp. at 22; Compl. ¶¶ 161, 176.) Not so. In both Counts I and III, Plaintiffs challenge Caremark's denial of coverage for Zepbound on the basis that it was not medically necessary or covered under the Plans. (*Compare* Compl. ¶ 165 *with* ¶ 177.) Plaintiffs attempt to distinguish the breach of fiduciary duty claim with reference to Caremark's rebate agreement, contending that Count III challenges Caremark's determinations with respect to Plaintiffs' individual claims and appeals, while Count I "[is] not limited to whether Plaintiffs personally received benefits owed under the plan." (Opp. at 22.) But the only fiduciary conduct Plaintiffs challenge in Count I is Caremark's "exercise of discretionary authority in adjudicating prescription drug claims and appeals[.]" (Opp. at 12; Compl. ¶ 165.) Plaintiffs' allegations about the rebate agreement merely provide a theoretical, and incorrect, motivation for the denial of Zepbound. (Compl. ¶ 142; *see also* Opp. at 8.) The alleged underlying misconduct is the same for both claims.

Plaintiffs' alleged injuries also are the same for both claims. Count I alleges that Caremark "artificially decreased the scope of coverage available under the plans," thereby "limiting the

availability of" Zepbound. (Compl. ¶ 167.) Count III likewise complains about the denial of Zepbound. (*Id.* ¶ 179.) And the relief Plaintiffs seek is ultimately the same. Although Plaintiffs argue Count I seeks "restitution, surcharge, and injunctive relief," (Opp. at 22), Plaintiffs' Complaint actually seeks "restitution" and "surcharge" solely for the alleged prohibited transaction claim in Count II. (*See* Compl. ¶ 175; *see generally* Compl.) And Plaintiffs' request for "injunctive relief" to "prevent Defendant's ongoing violations of ERISA and the applicable plans, and the harm those violations cause," simply requests Zepbound coverage, which is the same remedy they seek for their denial-of-benefits claim. (*See* Compl. ¶ 179 ("The denial of Zepbound should therefore be reversed . . . .").)

Plaintiffs' reliance on *New York State Psychiatric* and other outdated out-of-circuit decisions is unavailing. (Opp. at 23.) The Second Circuit has more recently held that duplicative breach of fiduciary duty claims should be dismissed as impermissible attempts at repackaging Section 502(a)(1)(B) claims. *Spillane v. N.Y.C. Dist. Council of Carpenters & Joiners of Am.*, 2024 U.S. App. LEXIS 1375, at * 7-8 (2d Cir. Jan. 22, 2024); *Aracich*, 2023 U.S. App. LEXIS 18729, at *13-14. Moreover, the Second Circuit's analysis in *Nechis v. Oxford Health Plans, Inc.* is particularly instructive. 421 F.3d 96 (2d Cir. 2005). In *Nechis*, the plaintiffs, unsatisfied with the denial of medical claims, sued their health plan for breaches of fiduciary duty and disclosure obligations and for wrongful denial of benefits. *Id.* at 98, 104. Regarding one plaintiff's Section 502(a)(3) claim, the plaintiff argued "that injunctive relief would be appropriate to end [the defendant health plan's] allegedly deceptive practices, to correct its disclosures and to reform its claims resolution procedures." *Id.* at 103. The Second Circuit rejected that approach because "any harm to her can be compensated by money damages, and she could have pursued an alternative

and effective remedy under § 502(a)(1)(B) of ERISA to recover the value of benefits wrongly denied." *Id.*

Because a remedy under Section 502(a)(1)(B) would sufficiently address Plaintiffs' alleged injuries, Plaintiffs' Section 502(a)(3) claim involving the *same* underlying conduct, *same* injury, and *same* relief must be dismissed. *See id.* at 104.[3]

### IV.    Plaintiffs fail to allege a prohibited transaction claim (Count II).

Plaintiffs' prohibited transaction theory similarly fails. Plaintiffs' Complaint contends that a prohibited transaction occurred when Caremark "remov[ed] Zepbound from formularies and substitut[ed] Wegovy," from which Caremark "directly benefited through rebate agreements with Novo Nordisk." (Compl. ¶ 172.) However, as Defendant explained in its Motion, and as Plaintiffs now concede, Caremark is not a fiduciary when it develops proprietary formularies and offers those formularies to its clients. (Mot. at 14-15; Opp. at 7 (characterizing the formulary change as "a non-fiduciary formulary decision").)

Plaintiffs' "rebate agreement" theory suffers from the same critical flaw as Plaintiffs' formulary management theory—Caremark does not act in a fiduciary capacity when it enters into rebate agreements with manufacturers. *See Doe v. Express Scripts, Inc.*, 837 F. App'x 44, 49 (2d Cir. 2020) (rejecting plaintiffs' argument that a PBM was acting as a fiduciary based on its setting drug prices and negotiating rebates with drug manufacturers that the PBM then could "keep for itself" as being "without merit"); *Mulder v. PCS Health Sys., Inc.*, 432 F. Supp. 2d 450, 459-60 (D. N.J. 2006) ("[The PBM] did not acquire fiduciary status or have discretionary authority over

---

[3]    For the reasons explained below with respect to Plaintiffs' claim for benefits in Count III, *infra* section V., Plaintiffs have not plausibly alleged that Caremark's decisions with respect to Plaintiffs' claims violated plan terms and, therefore, do not constitute a breach of fiduciary duty.

plan assets simply by contracting to receive its compensation for services through drug manufacturer rebates.").

Plaintiffs' Opposition contends that Caremark, as "a claims fiduciary, caused the plan to engage in a transaction—the rebate agreement with Novo Nordisk—that constituted a direct transfer of plan assets to Caremark in the form of the rebate payments it keeps." (Opp. at 16.) But nowhere in the Complaint do Plaintiffs allege that the *plans* were a party to or otherwise involved in the rebate agreements between Caremark and Novo Nordisk, or that this rebate arrangement involved a "direct transfer of plan assets." (*See* Compl. ¶¶ 6-7, 28, 30-31, 86-91, 135, 142, 167, 172.) Plaintiffs cannot amend their Complaint through their briefing. *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989). Moreover, Plaintiffs offer no explanation as to *how* rebate payments allegedly paid *from* Novo Nordisk *to* Caremark in any way constitute a transfer of "assets" of Plaintiffs' health plans.

## V.    Plaintiffs do not plausibly allege a violation of the plan terms (Count III).

Plaintiffs' Opposition incorrectly focuses solely on medical necessity in an attempt to avoid the fatal flaw in their argument – under both plans, a drug's inclusion on the plan's formulary is a threshold requirement for coverage.

### A.    Plaintiffs concede that Caremark denied their claims in part due to formulary status.

Neither of Plaintiffs' plans provide for coverage of Zepbound, because Zepbound is not on the plans' formularies. (Mot. at 17-18.) Defendant's Motion pointed to the specific provisions in the Hillside Plan and the Publicis Plan that establish this requirement and show *why* medical necessity is a necessary, but not sufficient, term of coverage. (Mot. at 18-19.) Plaintiffs ignore the plan language that Defendant cites and assume (without support) that a showing of medical necessity alone is sufficient to establish coverage.

Plaintiffs do not (and cannot) dispute that Zepbound was not covered in the first instance based on the plain terms of coverage for prescription drugs under the Hillside and Publicis plans. (*See* Compl. ¶¶ 13, 15, 23, 25; Mot. at 7-8; *see generally* Opp.) And because the plans plainly covered only the drugs that appear on the formularies adopted by their respective employer plan sponsors, Caremark had *no* discretion to deviate from the formulary and grant coverage for Zepbound. (Mot. at 20); *Elsroth v. Consol. Edison Co. of N.Y., Inc.*, 10 F. Supp. 2d 427, 436-37 (S.D.N.Y. 1998).

Plaintiffs attempt to avoid the formulary prerequisite under the plans by arguing that Caremark did not deny coverage on this basis and is now attempting to "rewrite its denial letters after the fact to avoid scrutiny of its fiduciary conduct." (Opp. at 18.) However, Caremark is not rewriting the denial letters or even providing a new basis for the denial of Plaintiffs' claims. Plaintiffs acknowledge that Caremark's denials were based in part on the fact that Zepbound was not a covered drug under the plans' formularies. (*See* Opp. at 13 ("Had Caremark denied coverage *solely* because Zepbound was excluded from the formulary…) (emphasis added); 18 ("Caremark did not deny Plaintiffs' claims *solely* because Zepbound was excluded as a non-covered drug.") (emphasis added).) Plaintiffs cannot ignore a clear and unambiguous coverage requirement under the plans, which was part of the reason Caremark denied Plaintiffs' claims, simply because they only address medical necessity in their Complaint.

**B.** **Plaintiffs concede that Caremark did not deny coverage for Zepbound after Plaintiffs provided documentation that Wegovy was contraindicated for them.**

Plaintiffs contend that the fact Zepbound was not on the formularies is not determinative because the SPDs allow for "coverage of drugs that are not on the formulary under certain instances." (Opp. at 20.) For support, Plaintiffs cite a purported Caremark document stating that "authorization for Zepbound may be granted when a patient cannot be treated with the formulary

alternative (Wegovy)." (Opp. at 21.) This argument fails for several reasons. First, neither this allegation nor this document appears anywhere in the Complaint. *See O'Brien*, 719 F. Supp. at 229. Second, Plaintiffs fail to explain how the unalleged document applies to either of their specific plans. (*See* Opp. at 21.) For these reasons, the Court should not consider it.

More importantly, even if an exception did exist where a "patient cannot be treated with the formulary alternative (Wegovy)," Plaintiffs concede they never provided any clinical documentation to Caremark that they "cannot be treated" with Wegovy. (Opp. at 21.) As Defendant explained in its Motion, neither Plaintiff submitted documentation showing they had tried Wegovy or Mounjaro, and the reasons why Wegovy or Mounjaro either did not work for them or were otherwise contraindicated. (Mot. at 8, 20.) Plaintiffs do not address this argument at all and still do not allege that they provided Caremark with information about why Zepbound was medically necessary *for them* as opposed to alternatives covered under their plans' formularies. (*See generally* Opp.) Plaintiffs have therefore conceded the argument. *See Malik*, 841 F. App'x at 284.

## VI.    Plaintiffs' other claims should be dismissed as duplicative.

Plaintiffs' Counts IV and V should be dismissed because they are duplicative of Counts II and III, and the Complaint does not plausibly allege that Caremark violated ERISA. (Mot. at 21.) Plaintiffs' Opposition does not respond to this argument with respect to Counts IV and V. (*See* Opp. at 22-23.) As such, Plaintiffs have waived any argument to the contrary and these Counts should be dismissed. *See Malik*, 841 F. App'x at 284.

## VII.    Plaintiffs cannot assert claims related to plans in which they do not participate.

Defendant cited several cases finding that ERISA plaintiffs *lack standing* to challenge conduct related to plans in which they never participated. (Mot. at 22-23.) Plaintiffs do not distinguish any of them. Though Plaintiffs boldly declare that Defendant's arguments are

"foreclosed by settled Second Circuit precedent" (Opp. at 24), *Plaintiffs do not cite a single case* holding that an ERISA plaintiff has standing (Article III, "statutory," or "class") to assert claims related to ERISA plans in which they never participated. (*See generally* Opp.)

The few cases Plaintiffs do cite do not support their argument. (Opp. at 24 citing *Moreno v. Deutsche Bank Ams. Holding Corp.*, 2017 U.S. Dist. LEXIS 143208, at \*29 (S.D.N.Y. Sep. 5, 2017); *Beach v. JPMorgan Chase Bank, Nat'l Ass'n*, 2019 U.S. Dist. LEXIS 97946, at \*11 (S.D.N.Y. June 11, 2019).) *Moreno* and *Beach* are not applicable because neither case involved plaintiffs seeking to assert claims on behalf of plans they did not participate in. The courts found that the plaintiffs had Article III standing to assert claims ***related to funds in which they did not invest their 401(k) plan***. Standing to assert claims related to ***separate plans*** in which plaintiffs were not ERISA "participants" was not at issue.[4] *Fletcher v. ConvergEx Group, L.L.C.*, 679 F. App'x 19, 21 (2d Cir. 2017), also does not support Plaintiffs' arguments. The district court held Fletcher lacked standing to represent members of ERISA plans of which he was not a member. The Second Circuit vacated and remanded for the district court to consider whether Fletcher could assert claims related to plans in which he was not a participant. *Id.* at 21. Significantly, on remand, the district court held **"**Fletcher has no class standing to represent the other plans in which he was not a participant." *Fletcher v. ConvergEx Grp. LLC*, 388 F. Supp. 3d 293, 298 (S.D.N.Y. 2019) ("*Fletcher II*"). Plaintiffs' Opposition neglects to mention *Fletcher II*.

Plaintiffs also cannot satisfy the standard established in *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012). In *NECA*, the Second Circuit explained that the conduct allegedly causing harm to the plaintiff must "implicate[] the same set

---

[4]    Plaintiffs also cite *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 103 (2d Cir. 2011). (Opp. at 24.) But whether the plaintiffs had standing to assert claims related to separate plans was not at issue in *Faber*.

of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *Id.* The "core question" for "class standing" "is whether a plaintiff who has a personal stake in proving her own claims against the defendant has a sufficiently personal and concrete stake in proving other, related claims against the defendant." *Ret. Bd. of the Policemen's Annuity and Benefit Fund of the City of Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154, 163 (2d Cir. 2014). Contrary to their argument, Plaintiffs' claims (and that of the putative class) do not turn on "uniform, centralized conduct" (Opp. at 25), but rather whether Zepbound is covered under the terms of **their plans** and **their claim denials**. (*See, e.g.*, Compl. ¶¶ 27, 29, 112-129.) Plaintiffs have no "personal or concrete" stake in proving that Zepbound is covered or meets the definition of "medically necessary" under *other plans* in which they do not participate. *See Ret. Bd.*, 775 F.3d at 156, 162-63.

Finally, while there would unquestionably be class certification issues in this case, the Court need not wait until class certification to dismiss Plaintiffs' claims related to other plans. "Class standing" is distinct from Rule 23's requirements, *NECA*, 693 F.3d at 158 n.9; *Ret. Bd.*, 775 F.3d at 161, and courts routinely consider "class standing" in connection with motions to dismiss. *See, e.g.*, *Fletcher II*, 388 F. Supp. 3d at 298 (rejecting argument that "class standing" must be determined during "class certification"); *Curtis v. Aetna Life Ins. Co.*, 648 F. Supp. 3d 358, 372 (D. Conn. 2023) (deciding class standing on motion to dismiss, finding plaintiffs should not be permitted class discovery without "class standing").

-12-

Dated: January 5, 2026

Respectfully submitted,
**ALSTON & BIRD LLP**

 */s/ Emily S. Costin*
Emily S. Costin (*pro hac vice*)
The Atlantic Building
950 F. Street, NW
Washington, DC 20004-1404
Tel: (202) 239-3300
Fax: (202) 239-3333
emily.costin@alston.com

Steven Penaro (Bar No. 4765046)
90 Park Ave.
New York, NY 10016
Tel: (212) 210-9460
steve.penaro@alston.com

Kelsey Kingsbery (*pro hac vice*)
555 Fayetteville Street, Suite 600
Raleigh, NC 27601
Tel: (919) 862-2227
kelsey.kingsbery@alston.com

*Attorneys for Defendant*
 CAREMARK RX, L.L.C. (d/b/a
 CVS CAREMARK)

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify, pursuant to Local Rule 7.1(c), that the foregoing memorandum, which was prepared using Times New Roman 12-point proportional font, contains 3,454 words.

*/s/ Emily S. Costin*
Emily S. Costin (pro hac vice)
**ALSTON & BIRD LLP**
The Atlantic Building
950 F. Street, NW
Washington, DC 20004-1404
Tel: (202) 239-3300
Fax: (202) 239-3333
emily.costin@alston.com
